IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL EUGENE HODGE, | : | CIVIL ACTION NO. **3:CV-06-1622** |
| Plaintiff | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background**.

The Plaintiff, Michael E. Hodge, an inmate at the Federal Correctional Institution at Allenwood, Allenwood, Pennsylvania ("FCI-Allenwood"), filed, *pro se,* this joint *Bivens*[1] action, pursuant to 28 U.S.C. § 1331, and Federal Tort Claims Act ("FTCA") action, pursuant to 28 U.S.C. § 1346 and § 2680, on August 18, 2006. Initially, Plaintiff claimed that the United States Marshals Service ("USMS") failed to ensure that he would receive comprehensive medical care while he was in its custody, prior to his federal trial for weapons charges. Plaintiff averred that, prior to this trial, the USMS failed to screen and treat him for blood-borne infectious diseases. Plaintiff claimed that, after his trial and conviction, the Bureau of Prisons ("BOP") failed to follow up on giving him a medical evaluation with respect to medical tests performed on him which showed he had abnormal

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

blood properties, and that it failed to inform him of the abnormal testing results. (Doc. 1, p. 2). Plaintiff claimed that the BOP failed to properly treat him after he was diagnosed with Hepatitis-C, Stage IV cirrhosis and "spleenmagaly" (sic). Plaintiff claimed that the BOP failed to timely treat and monitor him for complications regarding his medical condition. (*Id*., p. 3).

Plaintiff filed an *In Forma Pauperis* Motion, a Motion for Appointment of Counsel, a Motion for an Evidentiary Hearing, and a Motion to Consolidate his *Bivens* and FTCA action. (Docs. 3, 4, 5 & 8, 9, 12).[2]

On October 5, 2006, we issued a Report and Recommendation (Doc. 18), in which we preliminarily screened Plaintiff's original Complaint under the Prison Litigation Reform Act ("PLRA"). On November 29, 2006, the District Court issued a Memorandum and Order (Doc. 25), adopting our Report and Recommendation. On November 17, 2006, Plaintiff filed an Amended Complaint (Doc. 22) before the District Court issued its Order.

In its November 29, 2006 Order, the District Court directed Plaintiff to file an Amended Complaint in conformance with our Report and Recommendation. The District Court noted that Plaintiff's November 17, 2006 Amended Complaint may not address our findings as to Plaintiff's deficiencies with respect to both his *Bivens* claims and tort claim contained in his original pleading.

---

[2]Plaintiff's *in forma pauperis* request and Motion to Consolidate were granted, and his Motion for Appointment of Counsel was denied. On February 20, 2007, Plaintiff filed a Notice indicating that the Third Circuit has decided to entertain Plaintiff's appeal and mandamus motion with respect to the Court's denial of his Motion for Counsel. Doc. 52.

Upon review of Plaintiff's November 17, 2006 Amended Complaint, we found that it was not in conformance with our Report and Recommendation.[3] Therefore, on December 6, 2006, we issued an Order in which we directed Plaintiff to file a Second Amended Complaint, within twenty (20) days of the date of this Order, as specified in our Report and Recommendation (Doc. 18) with respect to his *Bivens* claims and his tort claim. (Doc. 29).

On February 20, 2007, Plaintiff filed his Second Amended Complaint. (Doc.. 51). Plaintiff again essentially claims that Defendants have failed to provide him with proper medical care for his stated serious medical conditions, both before and after his federal convictions. Specifically, Plaintiff states that Defendants (16), violated his constitutional rights by not providing him with proper and required medical care for his serious hepatitis C condition, *i.e.* Eighth Amendment violations. (Doc. 51).[4]

## II. Allegations of Second Amended Complaint.

In his original pleading, Plaintiff alleged that from April 2000 through April 2003, he was in pre-trial custody of the USMS, and taken to several holding facilities. Plaintiff stated that during this time, he made many claims to medical personnel related to his medical condition, such as delirium,

---

[3] In his Amended Complaint (Doc. 22), Plaintiff again incorrectly stated that it was filed, in part, pursuant to § 1983. As we previously noted, Plaintiff's constitutional claims were under *Bivens*, 28 U.S.C. § 1331, since he is a federal inmate. Plaintiff also continued to name Defendants in his Amended Complaint who were not proper parties with respect to his claims, as we specified in our Report and Recommendation. (Doc. 18).

[4] Plaintiff's Second Amended Complaint states that the unconstitutional conduct began after April 2000, but that he did not become aware that his civil rights were violated until 2005 when he was advised that he had hepatitis C, Stage IV. (Doc. 51, pp. 1-2). While there is a two-year statute of limitations for civil rights claims, this is an affirmative defense for Defendants to raise.

abdominal pain and fatigue, but that he was not given any diagnostic test to evaluate his symptoms. On May 7, 2003, the USMS remanded custody of Plaintiff to the BOP. (Doc., 1, p. 3).

In his initial pleading, Plaintiff averred that in May 2003, while at USP-Lee, Virginia, after a blood sample was taken from him, it was found that he had abnormalities indicative of a serious health issue.[5] Plaintiff also stated that in January 2005, at FCI-Allenwood, his current place of

---

[5]As we noted in our October 2006 Report and Recommendation, to the extent that Plaintiff is raising civil rights claims that occurred more than two (2) years before he filed this action, he may be barred by the two-year statute of limitations. In *Lake v. Arnold,* 232 F.3d 360 (3d Cir. 2002), the Third Circuit reiterated the general rule that a statute of limitations in a civil rights action is governed by state law. Specifically, the Court provided:

> In determining which state limitations period to use in federal civil rights cases, we look to the general, residual statute of limitations for personal injury actions. *See Wilson v. Garcia,* 471 U.S. 261, 276-80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). We must also incorporate any relevant state tolling rules. *See Hardin v. Straub,* 490 U.S. 536, 543- 44, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). Thus, for [a] § 1983 [] action[] originating in Pennsylvania, we look to 42 Pa.C.S. § 5524 []. *See Rose v. Bartle,* 871 F.2d 331, 347 (3d Cir.1989) (§ 1983)

*Id* at 370.

In *Joyner v. BOP*, 2005 WL 3088371 (M.D. Pa.), this Court held that a *Bivens* action is governed by Pennsylvania's two-year statute of limitations for personal damages. A civil rights cause of action accrues when plaintiff knew or should have known of his injury. *See Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Further, the statute of limitations is an affirmative defense that Defendants must raise.

We also previously noted that, insofar as Plaintiff is complaining about events which occurred at prisons outside of the Middle District of Pennsylvania, such as USP-Lee, Virginia, venue of such claims may not be proper in this Court. (Doc. 1, p. 4). In his Second Amended Complaint, Plaintiff also includes allegations which occurred in 2003 while he was confined outside of the Middle District of Pennsylvania. (Doc. 51, pp. 2, 7). We find that these claims and any Defendants named with respect to them, *i.e.* Defendants Jesus, Conrad, Webster and Wilson, should be dismissed. These four Defendants were not in the Middle District of Pennsylvania, and Plaintiff's claims against them did not arise in the Middle District of

incarceration, another blood sample was taken from him, with abnormal results, and that he had other tests, including a Hepatitis-C test, which showed that he had Hepatitis-C. (Doc. 1, p. 4). As noted above, Plaintiff states in his Second Amended Complaint that in 2005, he discovered that his rights were being violated when he found out that he had Stage IV hepatitis C. (Doc. 51, p. 2). Plaintiff then filed Administrative remedies regarding his lack of medical care, his request for treatment, and his delayed treatment. He filed a grievance in April 2005 with the BOP. In September 2005, he filed another grievance with the BOP, claiming that the BOP failed to properly evaluate his medical condition. (Doc. 1, p. 4).

In his original Complaint, Plaintiff alleged that in December 2005, February 2006 and March 2006, he filed additional grievances with the BOP regarding his claims of improper medical care and denial of treatment and medication for his serious conditions. (*Id.*, p. 5). Plaintiff alleged that as a result of the improper medical care, his conditions have worsened and he has been made to suffer undue complications and pain. Plaintiff stated that, based on his lack of proper medical treatment, he has been rendered disabled and his chances of recovery and for treatment have been negatively impacted resulting in his shortened life expectancy. (*Id.*).

In his Second Amended Complaint, Plaintiff again states that he has attempted to exhaust his Administrative remedies. (Doc. 51, p. 3).

Plaintiff summarizes his claim in his Second Amended Complaint as follows:

> [T]he continued acts that have denied/dalayed (sic) the Plaintiff (plf) comprehensive medical care for screening of infections desiese (sic)

---

Pennsylvania.

> diagnosis of Hepititis (sic) -C- (hep-c-), stage IV liver Cirrhosis and the
> continued treatment of cirrhosis that include participation in medicinal
> clinical trials, participation in organ transplantation programs, a
> medical nutritional diet and classification to a prison that is closer to
> the plf's home to support better family ties for psycological (sic)
> well being.

(Doc. 51, p. 1).

Plaintiff seeks compensatory and punitive damages as well as injunctive relief. (Doc. 51, p. 14). As stated, Plaintiff's request to join his FTCA action along with his *Bivens* suit has been granted. We now review Plaintiff's Second Amended Complaint against the responsible federal officials with respect to his Eighth Amendment improper medical care claims, and against the United States for negligence of its employees with respect to his FTCA action.[6]

With respect Plaintiff's FTCA claim in his Second Amended Complaint, he has properly named the United States. (Doc. 51, pp. 1, 13). As we have previously stated, the sole Defendant for Plaintiff's FTCA action is the United States.[7] Plaintiff's *Bivens* action should be against the federal officials allegedly responsible for not providing him with proper medical care.

Plaintiff's *Bivens* case is construed as an Eighth Amendment claim of unconstitutional failure to provide proper medical care. This portion of the case must be against the responsible individual federal officials. The *Bivens* action should be against responsible federal officials for alleged

---

[6] As we noted previously, we instructed Plaintiff to limit his claims in this action to those which occurred in the Middle District of Pennsylvania, *i.e.* at FCI-Allenwood. Thus, any events of which Plaintiff now complains that occurred prior to 2005, when he arrived at FCI-Allenwood, along with Defendants who acted outside of the Middle District of Pennsylvania, should be dismissed from this case. (Doc. 51, pp. 2, 7).

[7] *See* 28 U.S.C. § 2679(b) and (d)(1).

violations of Plaintiff's Eighth Amendment constitutional right to proper medical care.

### III. PLRA.

Since the Plaintiff has filed applications to proceed *in forma pauperis* (Docs. 2 & 10) pursuant to 28 U.S.C. § 1915, the Prison Litigation Reform Act of 1995 (the "PLRA")[8] obligates the Court to engage in a screening process. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing the Second Amended Complaint under 28 U.S.C. §1915(e)(2)(B), we find that , to the extent that Plaintiff is seeking to claim that his denial of proper medical care violated the Eighth Amendment, pursuant to *Bivens*, he has named six (6) of the responsible federal officials and stated their personal involvement in his Constitutional claim, *i.e.*, Defendants Brady, Okunday, Pigos, Laino and Vermiere. However, he has named federal officials who are not alleged to have had any personal involvement with respect to his Eighth Amendment claims, *i.e.* supervisory Defendants Ashcroft, Gonzales, McDonough, Lappin, Hogsten, Dodrill, and Watts. We shall recommend that these seven (7) supervisory Defendants be dismissed, and that Plaintiff be allowed to proceed with his *Bivens* action against five (5) Defendants, Brady, Okunday, Pigos, Laino, and Vermiere, as well

---

[8] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

his FTCA action against the United States.[9]  We shall recommend that Defendants Jesus, Conrad, Webster and Wilson be dismissed with respect to their May 2003 and June 2004 actions regarding Plaintiff's medical care, since it is clear from Plaintiff's prior pleading and his present pleading that these named individual Defendants were involved with Plaintiff's care when he was confined outside of the Middle District of Pennsylvania.  (Doc. 51, p. 7, ¶'s 14-15).

## IV. Discussion.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*.  Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).  A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992).  In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992). In Plaintiff's FTCA action only the United States can be named as Defendant.   Likewise, the United

---

[9]As discussed below, we take judicial notice that Defendant PA Inch, as a Public Health Services employee, is immune from Plaintiff's *Bivens* suit.

States and its federal agencies, such as DOJ and BOP, cannot be named as Defendants in a *Bivens* action.  *See Meyer*, *supra*.

Further, as stated, *Bivens* is based on alleged constitutional violations by federal officials, while the FTCA is an action against the United States to recover damages for negligence of federal employees.

Plaintiff now has been given two opportunities to amend his *Bivens* action as being against the responsible federal officials who allegedly deprived him of proper medical care in the Middle District of Pennsylvania.

Since we find that Plaintiff has stated Eighth Amendment claims of denial of proper medical care with respect to Defendants Brady, Okunday, Pigos, Laino, Inch and Vermiere, we shall not discuss these Defendants in detail herein.  Suffice to say that these six (6) Defendants are all alleged to have been personally involved in Plaintiff's medical care while he was in the Middle District of Pennsylvania, and that they denied him proper care for his serious hepatitis C condition.  (Doc. 51, pp. 8-9).

Notwithstanding our finding that Plaintiff has stated the personal involvement of Defendant Inch (Doc. 51, p. 9, ¶ 24), this Court has previously found that Inch is a Public Health Services employee, and as such, she is immune from Plaintiff's Eighth Amendment *Bivens* action.  *See Freeman v. Frimpong*, Civil No. 04-1546, M.D. Pa.  In the *Freeman* case, the District Court issued a Memorandum and Order on May 16, 2005, granting Defendants' Motion to Dismiss Defendant PA Inch.  (Doc. 53, No. 04-1546).  Plaintiff's remedy regarding any medical malpractice by Defendant PA Inch is his FTCA action, which he has joined to his present *Bivens* action.  We take

judicial notice that Defendant Inch is immune from this *Bivens* action. We thus will recommend that Defendant Inch be dismissed, since she is immune from Plaintiff's *Bivens* action. *See also Henderson v. Bussanich*, M.D. Pa. Civil No. 06-925, Memorandum and Order of March 2, 2007, Doc. 41.

Moreover, with respect to the stated Attorneys General (present and former), BOP officials and USMS director, namely Defendants Ashcroft, Gonzales, McDonough, Lappin, Hogsten, Dodrill, and Watts, we find that Plaintiff is again attempting to hold these seven (7) supervisory officials liable based solely on *respondeat superior*.

Defendants Ashcroft and Gonzales were the former and present United States Attorneys General, respectively. Defendant McDonough is the Director of the USMS. (Doc. 51, p. 13). Defendant Lappin is the Director of the BOP. Defendant Hogsten is Warden at FCI-Allenwood. Defendant Dodrill is BOP Regional Director. Defendant Watts is BOP National Administrator. We find that these seven (7) Defendants are all subject to dismissal.

In his Second Amended Complaint, Plaintiff does not sufficiently state the personal involvement of the seven (7) supervisory Defendants with respect to the alleged denial of proper medical care claims. We find that these supervisory Defendants are named solely due to their positions with the DOJ, BOP and USMS. Plaintiff also attempts to name three (3) of the supervisory Defendants, *i.e.* Hogsten, Dodrill and Watts, with respect to their responses to his grievances. (Doc. 51, pp. 10-11). Plaintiff does not indicate that the seven (7) supervisory Defendants were directly involved with his medical care and that they were personally deliberately indifferent to denying him proper care. Plaintiff clearly indicates that he was under the care of the prison medical staff at FCI-Allenwood, and thus the named supervisory Defendants are not liable under *Durmer v. O'Carroll*,

991 F.2d 64 (3d Cir. 1993).

In *Henderson v. Bussanich*, M.D. Pa. Civil No. 06-925, Memorandum and Order of March 2, 2007, Doc. 41, slip op. p. 4, this Court stated:

> Generally, "prison staff members who are not medical personnel cannot be held liable for failing to respond to a prisoner's medical complaints where the prisoner was receiving medical treatment from prison doctors at the complained time." Quinn v. Palakovich, No. 3:04-1894, 2005 WL 1155871, at * 2 (M.D. Pa. April 19, 2005) (citing Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)). [FN4] Liability may be appropriately imposed, however, on a non-physician prison official if he had actual knowledge or reason to know of the medical mistreatment committed by his employees. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (concluding that "absent reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference'); see also Thomas v. Cerullo, No. 99-1312, 2005 WL 1155050, at * 6 (M.D. Pa. May 2, 2005) (same).
>
> [FN4] A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983, and the same legal principals have been held to apply. See, e.g., Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006). Thus, the Court's use of § 1983 cases such as Quinn in its discussion of Plaintiff's Bivens action is appropriate.

Our Plaintiff basically alleges that the supervisory Defendants should have known that he had a serious illness since it was their responsibility to know based on their positions with their respective federal agencies. We find that the rule in *Durmer* applies to precisely the type of claims our Plaintiff is making against the seven (7) supervisory Defendants. (Doc. 51, pp. 10-12).

Further, Plaintiff does not claim that the supervisory Defendants caused him any injuries or that they personally refused to allow him to be medically treated for his hepatitis C. The allegations in Plaintiff's Second Amended Complaint do not support Plaintiff's present Eighth Amendment

denial of medical care claims as against the seven (7) supervisory Defendants.

Consequently, based on the present pleading, the Plaintiff has failed to allege an Eighth Amendment violations by Defendants Ashcroft, Gonzales, McDonough, Lappin, Hogsten, Dodrill, and Watts. Plaintiff's Eighth Amendment claim as to these seven (7) Defendants should be dismissed. Moreover, Plaintiff does not allege with sufficient specificity the personal involvement of these seven (7) Defendants. Rather, Plaintiff attempts to name them based on *respondeat superior*.

As discussed, Plaintiff does not adequately state what these seven (7) Defendants did to personally violate any of his Constitutional rights. Liability may only be based upon the Defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976).

The Eighth Amendment requires that the official must know of and disregard an excessive risk to inmate health or safety. *Farmer,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "The question…is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843.

Here, Plaintiff does not allege to have suffered any injury from the actions of the seven (7) supervisory Defendants. Plaintiff does not allege that the stated Defendants were directly involved with his medical care and that they personally were deliberately indifferent to his serious medical condition. (Doc. 51, pp. 10-12). Thus, the alleged conduct of the seven (7) supervisory Defendants does not amount to deliberate indifference and is not sufficient to constitute an Eighth Amendment violation. Also, since Plaintiff was under the care of the prison medical staff for his left knee impairment, these non-medical Defendants cannot be held liable under *Durmer, infra*. Plaintiff does not allege that these supervisory Defendants personally deprived him medical care; rather, Plaintiff names them as Defendants due to their lack of action to direct their subordinates to give him certain medical care which he claims was required, such as to treat him with GCSF medicine, to allow him to participate in clinical trials and to participate in an organ transplant program. Plaintiff only

mentions these Defendants for failing to take corrective action to have their subordinates provide him with medical care he claims was proper, and for failing to direct the other Defendants to give him the care he believes was proper. Plaintiff does not state that the stated Defendants denied him medical care.[10] In fact, Plaintiff admits to quite extensive medical care, but he claims that he should be given medicines that the doctors will not prescribe, and that he should be allowed to participate in clinical trials and the organ transplant program. There are no allegations which create any personal liability as to the stated seven (7) Defendants. These Defendants are not alleged to have directly participated in any violations of Plaintiff's rights. Since there is insufficient personal involvement alleged on the part of these seven (7) supervisory Defendants in any constitutional violation, they should also be dismissed. *Rizzo, supra; Parratt, supra*. Pursuant to *Rizzo*, *supra*, the supervisory Defendants cannot be held liable based on *respondeat superior* in this case as Plaintiff attempts to do. Thus, the seven (7) supervisory Defendants, Ashcroft, Gonzales, McDonough, Lappin, Hogsten, Dodrill, and Watts should be dismissed from this case.

Plaintiff also names Hogsten, Dodrill and Watts with respect to their responses to his grievances. The conduct of these three (3) Defendants with respect to the receipt of Plaintiff's grievances and their responses to them are not sufficient to hold them liable in this action.

---

[10] We again note that, since Plaintiff was being treated by the prison doctors and the prison PA's, the seven (7) supervisory Defendants, who are not medical personnel, are not liable under the Eighth Amendment pursuant to *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

We also note that Plaintiff's claims, in part, against the treating prison medical staff amount to differences of opinion as to what the proper care for Plaintiff was.

A prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.* 433 U.S. 119, 137-138 (1977). This very Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995). *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra.*

As the Court stated in *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. *Rode, supra.* Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential liability in any case

in which the prisoner merely transmitted correspondence to the official. *Id*. Thus, several courts have held that "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin*, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) (citations omitted); *accord Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored insufficient to hold those officials liable under section 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints ... does not render [prison officials] personally liable under § 1983."); *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.") (citations omitted). The Second Circuit Court has stated that "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability." *Walker v. Pataro*, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).

**V. Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's Second Amended Complaint be dismissed as to Defendants Ashcroft, Gonzales, McDonough, Lappin, Jesus, Conrad, Webster, Wilson, Inch, Hogsten, Dodrill and Watts. **(Doc. 51).** It is further recommended that Plaintiff's *Bivens* action proceed with respect to Defendants Vermiere, Okunday, Brady, Laino and Pigos, and that his FTCA action proceed against the United States. Plaintiff's February 20, 2007 Motion to Serve Defendants (Doc. 53) should be denied as moot if the District Court adopts our

Report and Recommendation, since, upon remand we will direct the USMS to serve any remaining Defendants with Plaintiff's Second Amended Complaint. Finally, it is recommended that this case be remanded to the undersigned for further proceedings.


                                       **s/ Thomas M. Blewitt**
                                       **THOMAS M. BLEWITT**
                                       **United States Magistrate Judge**

**Dated: March 8, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL EUGENE HODGE, | : | CIVIL ACTION NO. **3:CV-06-1622** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| | : | |
| UNITED STATES DEPT. OF JUSTICE, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 8, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                         s/ Thomas M. Blewitt
                                         **THOMAS M. BLEWITT**
                                         **United States Magistrate Judge**


**Dated: March 8, 2007**