IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL HODGE, | : | CIVIL ACTION NO. **3:CV-06-1622** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

## I. Background.

Plaintiff, Michael Hodge, a *pro se* inmate, is proceeding on his Eighth Amendment claims with respect to his *Bivens* civil rights action, under 28 U.S.C. § 1331, as against five individual Defendants who were employed at FCI-Allenwood, *i.e.* Brady, Pigos, Laino, Vermeire and Okundaye, and on his negligence claim in his FTCA action against the United States. (*See* Doc. 62). Plaintiff's *in forma pauperis* Motion was granted. (Doc. 64).[1]

Plaintiff is now confined at SCI-Butner, Butner, North Carolina. (*See* Doc. 158, Doc. 164, att. envelope and Doc. 163, p. 7). Plaintiff was formerly an inmate confined at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania ("FCI-Allenwood"). All of Plaintiff's claims, both constitutionally claims and negligence claim, occurred during his confinement at FCI-Allenwood and relate to the alleged improper medical care Plaintiff received for his Hepatitis C and

---

[1]In our January 30, 2009 Report and Recommendation ("R&R"), we recommended that Plaintiff's FTCA action against the United States be dismissed. (Doc. 165). Thus, in the present R&R, we discuss only Defendants' Motion to Dismiss or for Summary Judgment (Doc. 111) with respect to Plaintiff's Eighth Amendment claims against the five individual Defendants. We also discuss Plaintiff's Motion to Compel Information Related to Defendants. (Doc. 154).

Stage IV liver cirrhosis conditions.

Plaintiff is proceeding on his Second Amended Complaint which was filed on February 20, 2007.  (Doc. 51).  Plaintiff essentially claims that the five individual Defendants failed to provide him with proper medical care for his stated serious liver conditions, *i.e.*, Eighth Amendment violations.[2]

On April 16, 2008, all remaining Defendants, *i.e.* United States, Brady, Pigos, Laino, Vermeire and Okundaye, jointly filed a Motion to Dismiss or, in the alternative, for Summary Judgment. **(Doc. 111)**.  On April 30, 2008, Defendants filed their support Brief and their Rule 56.1, M.D. Pa., Statement of Material Facts ("SMF"), with numerous attached Exhibits.  (Docs. 116 and 117).  Plaintiff filed his response to Defendants' SMF, his opposition Brief, and exhibits.  (Docs. 135, 136 and 141).  Defendants' dispositive Motion has been briefed and is ripe for disposition.[3]

On August 14, 2008, Plaintiff filed a Motion to Compel Information Related to Defendants. **(Doc. 154)**.  Defendants filed their opposition Brief with exhibits on August 25, 2008.  (Doc. 155).

---

[2]The record shows that Defendant Dr. Vermeire began treating  Plaintiff's liver condition with Interferon and Ribavirin tablets in October 2005.  (Doc. 117, p. 4).  During Plaintiff's treatment by the FCI-Allenwood medical staff, including Defendants Dr. Brady and Dr. Pigos, through October 2006, Plaintiff's Interferon medication was deceased and increased back to a full dose, depending, in part, on lab results such as his white blood count.  In October 2006, Plaintiff's  medications for Interferon and Ribavirin were discontinued based on the recommendation of an outside liver specialist.  (*Id.*, pp. 4-11).

[3]This action was assigned to the undersigned for pre-trial matters pursuant to 28 U.S.C. § 636(b).

In their pending dispositive Motion, Defendants argue, in part, that Plaintiff's *Bivens* claims as against them in their official capacities must be dismissed since they are entitled to sovereign immunity, that Defendant Laino must be dismissed since he did not have personal involvement with Plaintiff's Eighth Amendment claims, and since *respondeat superior* is not a basis to hold this Defendant liable in a *Bivens* action, and that Plaintiff's conspiracy claim and equal protection claim must be dismissed for failure to sufficiently state claims.  With respect to the summary judgment portion of Defendants' Motion, they argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims since the record shows they were not deliberately indifferent to Plaintiff's serious medical needs, and that they are entitled to qualified immunity regarding these claims. (Doc. 116, p. 12).  We consider the evidence submitted by both parties with respect to the summary judgment portion of Defendants' dispositive Motion.

In the present Report and Recommendation ("R&R"), as noted, we address the stated portion of Defendants' dispositive Motion regarding Plaintiff's *Bivens* claims, as well as Plaintiff's Doc. 154 Motion to Compel.[4]

## II.  Motion to Dismiss Standard.

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new standard to dismiss, as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. –, 127 S. Ct. 1955 (2007), as follows:

---

[4]As noted, we have addressed the arguments of Defendants asserted in their dispositive Motion with respect to Plaintiff's FTCA action against Defendant United States in a separate R&R.  (Doc. 165).  Thus, when we refer to Defendants herein, we mean only the five individual Defendants and do not include the United States.

3

As the United States Supreme Court recently held in
*Bell Atlantic Corp. v. Twombly*, [550] U.S. —, 127 S.Ct.
1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must
be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege
"enough facts to state a claim to relief that is plausible on
its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard
set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,
2 L.Ed.2d 80 (1957)).  The court must accept as true all
all allegations of the Complaint and all reasonable factual
inferences must be viewed in the light most favorable to plaintiff.
*Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
(3d Cir. 1985).  The Court, however, need not accept inferences
drawn by plaintiff if they are unsupported by the facts as set
forth in the complaint.  *See California Pub. Employee Ret. Sys. v.
The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing
*Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906
(3d Cir. 1997)).  Nor must the court accept legal conclusions
set forth as factual allegations.  *Bell Atlantic Corp.*, 127 S.Ct.
at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct.
2932, 92 L.Ed.2d 209 (1986)).  "Factual allegations must be
enough to raise a right to relief above the speculative level."
*Bell Atlantic Corp.*, 127 S.Ct. at 1965.  Although the United
States Supreme Court does "not require heightened fact pleading
of specifics, [the Court does require] enough facts to state a claim
to relief that is plausible on its face."  *Id* at 1974.

*See also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 588 (M.D. Pa. 2008).

### III.  Motion for Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56. The court may grant a motion for summary judgment

if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show

that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).   An issue of fact is

"`genuine' only if a reasonable jury, considering the evidence presented, could find for the

nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Moreover, the Third Circuit has indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

**IV. Discussion.**

Plaintiff basically alleges that the remaining five medical Defendants, Dr. Vermeire, Dr. Pigos, Dr. Brady, Dr. Okundaye and P.A. (physician assistant) Laino, violated his Eighth Amendment rights by denying him proper medical care for his Hepatitis C and cirrhosis liver conditions, and that they delayed proper treatment and denied him a required medical diet.  Plaintiff also alleges that Defendants conspired to deprive him of his constitutional rights.

We first address Plaintiff's Motion to Compel. (Doc. 154).

*1. Plaintiff's Motion to Compel Information Related to Defendants, Doc. 154*

Plaintiff requests that Defendants be compelled to provide him with information related to seven medical professionals, namely Dr. Vermeire, Dr. Pigos, Dr. Brady, Dr. Okundaye, P.A. Laino, Dr. Sommers, and P.A. Inch.  All of the medical professionals are Defendants in this case except for Dr. Sommers, and P.A. Inch.   Plaintiff indicates that Dr. Sommers was employed at Susquehanna Health Systems facility, and that Dr. Sommers was not employed by the BOP at FCI-Allenwood. P.A. Inch is not alleged to have been involved in Plaintiff's medical care at FCI-Allenwood during the relevant times of this case.  The information which Plaintiff wants Defendants to provide is specified in his Attachment #1 to his Motion, and includes the full names of the medical personnel. Plaintiff states that, after Defendants provided him with the address for the appropriate Pennsylvania medical licensing agency, he received some information about the stated medical personnel from the Pennsylvania Bureau of Professional and Occupational Affairs.  Plaintiff attaches, as Att. #2 and #3 to his Motion, the information about Dr. Pigos and Dr. Vermeire which he received. Plaintiff states that he wants the Court to direct Defendants to provide him with all of the

Information (numbers 1.-5.) he seeks about Dr. Vermeire, Dr. Pigos, Dr. Brady, Dr. Okundaye, P.A. Laino, Dr. Sommers, and P.A. Inch which is listed in his Att.#1 to his Motion.   Plaintiff states, without any explanation, that this information is material to his case.

As the Court stated in *Korescko v. Bleiweis*, 2004 WL 2005785, * 1 (E.D. Pa.):

> The Federal Rules of Civil Procedure are liberal with respect to discovery, permitting the requesting party to obtain even inadmissible material, as long as it is relevant to the claim or defense of any party, unprivileged, and reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).

> Federal Rule 33 requires a party served with interrogatories to respond to each within 30 days after they were served.  Rule 33(b)(1) and (3).  The party serving the interrogatories may move under Rule 37(a) to compel an answer to an interrogatory to which the receiving party has objected or which it has otherwise failed to answer.  Rule 33(b)(5).

> Similarly, Federal Rule 34 requires that a party served with a document request either produce the requested documents or else state a specific objection for each item or category objected to.  Here, again, if the party served fails to respond adequately to a document request, the serving party may file a motion to compel under Rule 37(a).  Fed.R.Civ.P. 34(b), 37(a)(1)(B).

The Court stated in *Paluch v. Dawson*, 2007 WL 4375937, * 1 (M.D. Pa.):

> Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial.  *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The polestar of discovery is relevance. Relevance for discovery purposes is defined broadly. The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is

defeasible." *Pearson v. Miller,* 211 F.3d 57, 65 (3d Cir.2000). Rule
26(b)(2) authorizes a court to limit discovery where
(I) the discovery sought is unreasonably cumulative or duplicative, or
is obtainable from some other source that is more convenient, less
burdensome, or less expensive; (ii) the party seeking discovery
has had ample opportunity to obtain the information sought by
discovery in the action; or (iii) the burden or expense of the
proposed discovery outweighs its likely benefit, considering the needs
of the case, the amount in controversy, the parties' resources, the
importance of the issues at stake in the action, and the importance of
the discovery in resolving the issues.

The *Paluch* Court further stated:

Federal Rule of Civil Procedure 37 allows a party who has
received evasive or incomplete discovery responses to seek a court
order compelling additional disclosure or discovery. The party seeking
the order to compel must demonstrate the relevance of the information
sought. The burden then shifts to the opposing party, who must
demonstrate in specific terms why a discovery request does not fall
within the broad scope of discovery or is otherwise privileged or
improper. *Goodman v. Wagner,* 553 F.Supp. 255, 258 (E.D.Pa.1982).

2007 WL 4375937, *2.

Initially, we agree with Defendants that any information Plaintiff seeks as to P.A. Inch an Dr.

Sommers is not relevant to this case since they are not Defendants and there are no claims asserted

against them, and since Plaintiff has not previously requested any information about these two

individuals from Defendants *via* discovery. Further, Dr. Sommers was not even employed by the

BOP.

Defendants' exhibits attached to their Brief (Doc. 155) show that in response to Plaintiff's

Disclosure Request No. 8, Defendants provided Plaintiff with the full names and BOP positions of

Defendants Dr. Vermeire, Dr. Pigos, Dr. Brady, Dr. Okundaye, and P.A. Laino. Defendants also

provided Plaintiff with the stated Pennsylvania agency which is the licensing board pertaining to the

Defendant doctors' medical licenses.  Thus, to the extent that Plaintiff seeks such information in his present Motion, these requests are moot.

We find that Defendants' Response  to Plaintiff's Request No. 8 was proper and provided Plaintiff with the information he sought that was relevant to his present Eighth Amendment claims. We find that the remaining information which Plaintiff seeks in his Att. #1 to his Motion, namely, the names of Defendants' medical schools and their class ranks, the specialty degrees and continued education degrees Defendants received, the  places where Defendants performed their residencies, the Pennsylvania employment history of each Defendant, and complaints or lawsuits filed against Defendants, is not relevant to his *Bivens* claims.  In fact, in his Motion, Plaintiff fails to explain how each requested piece of information is relevant to any of his Eighth Amendment claims.  (Doc. 154, p. 2).  Rather, Plaintiff merely states in a conclusory manner that all of the information is material to his action.  (*Id*.).  We also find that Plaintiff does not require any of his requested information to respond to Defendants' dispositive Motion.

Thus, we will recommend that Plaintiff's Motion to Compel Information Related to Defendants, Doc. 154, be denied.

We now address Defendants' dispositive Motion. (Doc. 111).

2.      *Defendants' Motion to Dismiss the Monetary Claims Against Them*
         *in their Official Capacities*

In his Amended Complaint, Plaintiff request compensatory and punitive damages, as well as injunctive relief.  (Doc. 51, p. 14).  We agree with Defendants that insofar as Plaintiff is seeking monetary damages against them in their official capacities regarding his Eighth Amendment claims, this request must be dismissed based on well settled case law.  (Doc. 116, pp. 14-16).

Plaintiff cannot seek monetary damages against the federal Defendants in their official capacities.  As the Court in *Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998), stated:

> To the extent that the proposed claims seek monetary damages against the United States or individual defendants in their official capacities, the claims are barred by the doctrine of sovereign immunity.  *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does not allege that the United States has waived its immunity in this case. Furthermore, the Supreme Court has held that a *Bivens* action may not be brought against a federal agency. *Id.* 510 U.S. at 484-86, 114 S.Ct. at 1005-06.

Plaintiff seems to agree that he cannot seek monetary damages from Defendants in their official capacities, but he indicates that he can seek injunctive relief against Defendants in their official capacities.  (Doc. 141, p. 4).  Plaintiff states that his "action for injuction (sic) against the [BOP] for their (sic) continued actions to deny adequate medical care" can be brought against Defendants in this *Bivens* action.  (*Id.*).

As the Court noted in *Abuhoran v. Morrison*, 2005 WL 2140537, *1, n. 3 (E.D. Pa. 2005), since federal inmates did not indicate if they sued Defendants in their individual or official capacities, since inmates sought injunctive relief with respect to the BOP's policies, and since inmates sought money damages against the individual federal officials, the Court assumed that inmates intended to sue Defendants in both their official and individual capacities, *i.e.* they sued Defendants in their official capacities with respect to the injunctive relief sought and sued Defendants in their individual capacities with respect to the money damages sought. The *Abuhoran* Court cited to *Miller v. Smith*, 220 F. 3d 491, 494 (7th Cir. 2000), which held that "[w]here the Plaintiff seeks injunctive relief from official polices or customs, the Defendant has been sued in her

10

official capacity ... ."

Our Plaintiff seems to state that, to the extent that he sues Defendants in their official capacities, he only seeks injunctive relief against them for proper medical care for his stage IV liver cirrhosis condition.  (*Id*.).  We find that to the extent  Plaintiff has sued Defendants in their official capacities only with respect to his request for injunctive relief, Plaintiff can proceed with his injunction request against them.  Thus, insofar as Plaintiff seeks injunctive relief against the Defendants, he can sue them in their official capacities.  However,  Defendants are correct in that Plaintiff cannot sue any of them in their official capacities for monetary damages, and to the extent Plaintiff is attempting to do so, this claim for relief should be dismissed.

In short, Plaintiff can seek injunctive relief from Defendants in their official capacities, but he cannot seek monetary damages from them in their official capacities.  We will recommend that to the extent Plaintiff sues Defendants in their official capacities for monetary damages, this claim for relief be dismissed.

Plaintiff also states that his transfer out of FCI-Allenwood does not moot his request for injunctive relief against Defendants who were employed at FCI-Allenwood, since the Court can order their agency (BOP) to correct the inadequate medical care he states he is still receiving during his continued federal confinement.  (Doc. 141, p. 4).

As the Court stated in *Sutton v.  Rasheed*, 323 F. 3d 236, 248 (3d Cir. 2003):

> An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. *Abdul-Akbar,* 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial). But these claims are not mooted when a challenged action is (1) too short in duration "to be fully litigated

11

prior to its cessation or expiration"; and (2) "there [is] a reasonable
likelihood that the same complaining party would be subjected
to the same action again." *Id.* at 206; *see also Mesquite v. Aladdin's
Castle Inc.,* 455 U.S. 283, 298 n. 10, 102 S.Ct. 1070, 71 L.Ed.2d
152 (1982). When there is a voluntary cessation of a policy, a claim
will not be rendered moot if there remains the possibility that
plaintiffs will be disadvantaged "in the same fundamental way."
*Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City
of Jacksonville,* 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586
(1993). Instead, the dismissal of an action on mootness grounds requires
the defendant to demonstrate that "there is no reasonable expectation
that the wrong will be repeated." *Id.* (quotation omitted).

In *Meekins v. Beard*, 2008 WL 474250, *2 (M.D. Pa.), this Court stated that "a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. *See Weaver v. Wilcox*, 650 F. 2d 22, 27 n. 13 (3d Cir. 1981) ('prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.')." The *Meekins* Court also stated that since "it is well established that a prisoner 'has no justifiable expectation that he will be incarcerated in any particular prison'," "it is clear that injunctive relief is not warranted. *Id*. (citations omitted); *Hart v. Whalen*, 2008 WL 4107651 (M.D. Pa.).

For a plaintiff to have standing to seek injunctive relief, past exposure to illegal conduct is not enough to show standing. *O'Shea v. Littleton*, 414 U.S. 488, 495, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974). Thus, since Plaintiff Hodge is not currently confined at FCI-Allenwood, he must show that there is a "real and immediate threat that he would again be [the victim of the alleged unconstitutional practice]." *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987). It is undisputed that Plaintiff Hodge is not currently incarcerated in FCI-Allenwood, and he does not allege that he will again be incarcerated at this prison in the future. Plaintiff is confined at LSCI-Butner, N.C. (Doc.

12

158). However, Plaintiff states that the wrong for which he seeks injunctive relief with respect to his claim about the refusal of the BOP to give him proper medical care for his liver cirrhosis condition is being repeated at his current federal prison.  Since Plaintiff states that there is an immediate threat to him, he may have standing to bring his claim for injunctive relief regarding the failure of the BOP to give him adequate medical care for his Stage IV cirrhosis of the liver condition.

Therefore, we will not recommend that Plaintiff's claim for injunctive relief be dismissed.

3.  *Defendants' Motion for Summary Judgment with respect to Defendant Laino*

Defendants argue that Health Services Services Administrator ("HSA") Laino, who was responsible for the overall functioning of the Health Services Department, and who oversees and supervises the health services staff at FCI-Allenwood, lacks sufficient personal involvement with respect to the medical care Plaintiff received at the prison during the relevant times of this case. (Doc. 116, pp. 16-17).

Plaintiff contends that Defendant Laino was directly involved with his medical care as follows:

> [Laino] ... instruct[ed] his surrogates to cut any costs of any evaluations or follow up Gastrointrologist (sic) consultations that could be made to appear as an unnecessary event, these secondary acts committed/omitted pursuant to directions of an internal mandate from his superiors are acts of personal involvement in a complex conspiracy, further the defendant Laino received, responded and ignored multiple verbal and written requests from the plaintiff regarding the level and choices made by his medical staff concerning the level and type of medical care provided under his watch, concerning the deliberate indifferences (sic) of the standard medical practices.

(Doc. 141, p. 5).

13

As Defendants recognize (Doc. 116, p. 17), it is well established that personal liability in a civil rights action cannot be imposed upon a prison official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Mathews v. Villella*, Civil No. 08-0964, (M.D. Pa., 2-6-09), slip op. p. 15(citations omitted).   It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*

As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

This Court in *Padilla v. Beard*, 2006 WL 1410079, * 6  (M.D. Pa.) stated:

> [A]n allegation that an official ignored an inmate's request for an investigation or that the official did not properly investigate is insufficient to hold that official liable for the alleged violations.  *Greenwaldt v. Coughlin*, 1995 WL 232736 (S.D.N.Y.Apr.19, 1995) (citations omitted); *Rivera v. Goord*, 119 F.Supp.2d 327 (S.D.N.Y.2000).  As stated it is well established that personal liability ... cannot be imposed upon a[n] ... official based on a theory of respondeat superior.  (Citation omitted).  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a [civil rights] case and that a complaint must allege such personal involvement.  (Citation Omitted).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrence upon which Plaintiff's claims are based.  (Citation Omitted).

Plaintiff argues that Defendant Laino was aware of his medical condition, assisted the other Defendants as to his course of treatment, and instructed his subordinates to cut the costs of medical care at the prison which affected his care.  (Doc. 141, p. 7).  We agree with Defendants,  based on undisputed evidence,  that Plaintiff's claims against supervisory Defendant Laino stem from his position as being responsible for the overall functioning of the Health Services Department at FCI-Allenwood and not from his direct involvement with Plaintiff's care and treatment for his liver conditions.

In *O'Connell*, 2008 WL 144199, * 21, the Court stated:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  *Rode*, 845 F.2d at 1207.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Id.  See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, in order to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations.  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

In his Declaration, Defendant Laino avers as follows:

> 3.   Although I am licensed in the State of Pennsylvania as a Certified Physician's Assistant, I do not ordinarily evaluate and treat inmates as the HSA at FCC Allenwood.  As the HSA, I oversee and supervise the FCC Health Services staff.  I am responsible for the overall functioning of the Health Services Department at FCC Allenwood.

> 4.   I did not render any treatment to inmate Hodge during his incarceration at FCI-Allenwood.  I had no involvement in the decisions surrounding Hodge's medical care or treatment.

15

(Doc. 117, Ex. 2).

We do not find that Plaintiff has offered any evidence to contradict Defendant Laino's averments in his Declaration.  In his Brief, Plaintiff generally refers to his Doc. 136 exhibits. However, we do not find that any of Plaintiff's exhibits show that Defendant Laino was personally involved in the treatment of Plaintiff or in the decisions about Plaintiff's care.  In fact, in his opposition Brief, Plaintiff left blank the pages of his exhibits which he claimed showed Defendant Laino's personal involvement with his medical care.  (Doc. 141, pp. 5 and 8).

Thus, we will recommend that Defendants' Motion for Summary Judgment with respect to Defendant Laino be granted, and that judgment be entered in favor of Defendant Laino and against Plaintiff.

*4. Defendants' Motion to Dismiss Plaintiff's § 1983 Conspiracy Claim*

Defendants argue that Plaintiff's vague § 1983 conspiracy claim should be dismissed for failure to state a claim.  (Doc. 116, pp. 17-18).  We agree.

In his Amended Complaint, Plaintiff alleges that Defendants denied him a standard of care that was comparable to others, and that Defendants' conduct, which "[served] to deny [him] pretrial screening for infectious [disease] when the Defendants knew ... that [he] was in a high risk group for infection of blood born pathogens," constituted a conspiracy.  (Doc. 51, p. 2).  Plaintiff also avers that "the Defendants have implimented (sic) procedures that give an aperence (sic) of care and effectiveness in a conspiratorial way that denys (sic) prisoners with hepatitis and liver disiese (sic) effective madical (sic) care that equals others under the care of the United States Government ...."  (Doc.  51, p. 9, ¶22.).

16

Plaintiff, while deemed as raising a § 1983 conspiracy claim against Defendants, merely alleges a vague conspiracy absent any specific agreement between Defendants to violate his constitutional rights.  We find that Plaintiff's bare conclusory allegations of a § 1983 conspiracy against all Defendants are inadequate to state a cognizable conspiracy claim.  *See Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), aff'd. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993).  "The Plaintiff's allegations [of conspiracy] must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives.  Bare conclusory allegations of 'conspiracy' ... will not suffice to allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  *Id*. at 928.

As the Court stated in *Dennison v. Pa. Dept. of Corrections*, 268 F. Supp. 2d 387, 401 (M.D. Pa. 2003):

> To sustain a conspiracy claim under section 1983, [Plaintiff] must establish that: (1) defendants deprived him of a right secured by the Constitution or laws of the United States and (2) conspired to do so while acting under color of state law.  *Adickes v S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000).  Additionally, "'to [s]ufficiently allege a conspiracy, a plaintiff must s how a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'"  *Marchese*, 110 F.Supp.2d at 371 (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).  "'A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'"  *Id*. (quoting *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D. Pa. 1999)) (other internal citations omitted).

Plaintiff Hodge does not specify any role or agreement of any Defendant  with any of the

other individual Defendants in the alleged conspiracy to deny him with effective medical care for his liver disease and to deprive him of the same care others, to whom the government was under a duty to provide care, received.  As Defendants correctly state, "Hodge fails to allege what Defendants conspired to do, or what actions they took in furtherance of the alleged conspiracy." (Doc. 116, p. 18).[5]

Therefore, we will recommend that Defendants' Motion to Dismiss Plaintiff's §1983 conspiracy claim be granted.  *See Kokinda v. Breiner*, 557 F. Supp. 2d at 588; *Eichelman, supra*.

5.  *Defendants' Motion to Dismiss, Equal Protection Claim*

Plaintiff alleges in his Amended Complaint, that Defendants denied him a standard of care that was comparable to others, and that Defendants' conduct, which "[served] to deny [him] pretrial screening for infectious [disease] when the Defendants knew ... that [he] was in a high risk group for infection of blood born pathogens", denied him equal protection.  (Doc. 51, p. 2).  Plaintiff avers that he was denied equal medical care by Defendants Dr. Vermeire, Dr. Brady and Dr. Okundaye since they failed to order baseline medical tests, as recommended by the medical field, to determine his exact condition and the proper course of treatment for him.  (*Id*., p. 8, ¶ 19.). Plaintiff avers that the alleged "neglect" of Defendants to follow accepted medical procedures and

---

[5]We note that, pursuant to our discussion below, the undisputed evidence shows that Defendants were not deliberately indifferent to Plaintiff's serious liver conditions and that Defendants did not deprive Plaintiff of required medical care.  Thus, since Defendants did not violate Plaintiff's Eighth Amendment rights, there can be no conspiracy that they agreed to violate Plaintiff's constitutional rights.  *See Eichelman v. Lancaster County*, 510 F.Supp.2d 377, 394 (E.D. Pa. 2007) (court granted prison warden summary judgment with respect to inmate's § 1983 conspiracy claim since there was no evidence that warden entered into any agreement with prison staff to violate inmate's constitutional rights).

evaluations denied him equal medical care and led to his undue suffering and further damage to his liver.   (*Id*.).   Plaintiff concludes that the alleged failure of Defendants to to comprehensively treat his liver disease violated his civil rights since he did not receive "the level of care and disease (sic) managment (sic) that is effective and equal to others."  (*Id*., p. 13).

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 equal protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial evidence.  *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination.  *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984).  It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination.  *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v.*

*Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988).  This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors.  *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Plaintiff Hodge has not alleged facts from which it can be concluded that he is a member of a protected class, and he has not alleged that Defendants engaged in intentional or purposeful discrimination.  We agree with Defendants (Doc. 116, p. 19) that  Plaintiff does not allege  that he was treated differently by Defendants than similarly situated persons on the basis of his race.  In short, Plaintiff does not allege that others similarly situated, but who were not within a protected class, were given proper medical tests and evaluations to determine the proper course of treatment for their medical conditions.  Thus, there is no cognizable equal protection claim stated by Plaintiff.

The Court in *Porter v. Grace*, 2006 WL 680820, *2 (M.D. Pa.), considered an equal protection claim and stated:

> "An equal protection claim arises when an individual contends that he is receiving different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Sale School Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980). Inasmuch as the Petitioner has not alleged that he was treated differently than others similarly situated, his equal protection claim must fail.

The Court in *Mendoza v. Meisel*, 270 Fed. Appx. 105, 107-08 (3d Cir. 2008), stated that Plaintiff must allege "that he was treated differently from other people who are similarly situated, which is necessary to state an equal protection claim." (citation omitted).

Plaintiff Hodge does not properly allege he received different treatment than other similarly situated persons who were not within the protected class.  Therefore, we shall recommend that Plaintiff's Fourteenth Amendment equal protection claim against all Defendants be dismissed.

6.      *Defendants' Motion for Summary Judgment with Respect to Plaintiff's Eighth Amendment Claim of Deliberate Indifference to Proper Medical Care for his Liver Conditions*

The Eighth Amendment standard with respect to a denial of proper medical care claim was set forth by the Court in *Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 110-111 (3d Cir. 2007).  The *Goodrich* Court stated:

> A prison official's deliberate indifference to an inmate's serious medical needs constitutes a violation of the Eighth Amendment and states a cause of action under § 1983 *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment claim has objective and subjective components. First, the prisoner must show that his medical need is, objectively, sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). Second, he must establish that the prison official acted with subjective deliberate indifference, that is, that the

official was aware of a substantial risk of serious harm to the prisoner but disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

The *Goodrich* Court also stated:

> A medical need qualifies as "serious" for purposes of Eighth Amendment analysis if, for example, "it is one that has been diagnosed by a physician as requiring treatment." *Monmouth County Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (quotation and citation omitted). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quotation *111 and citation omitted). A mental illness may constitute a serious medical need. *Inmates of the Allegheny County Jail v. Pierce,* 612 F.2d 754, 763 (3d Cir.1979) ("Although most challenges to prison medical treatment have focused on the alleged deficiencies of medical treatment for physical ills, we perceive no reason why psychological or psychiatric care should not be held to the same standard.).

> An inmate can show deliberate indifference" where, for example, "prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering." *Lanzaro,* 834 F.2d at 346 (quotation and citation omitted). Alternatively, deliberate indifference" is shown where knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care" or where "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment." *Id.* at 346-47 (quotations and citations omitted). It is clear, however, that allegations of negligence do not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Finally, "whether or not a defendant's conduct amounts to deliberate indifference has been described as a classic issue for the fact finder." *A.M. ex. rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.,* 372 F.3d 572, 588 (3d Cir.2004) (quoting *Nicini v. Morra,* 212 F.3d 798, 816 (3d Cir.2000) (Rendell, J., dissenting)).

214 Fed. Appx. at 110-111.  *See also Ascenzi v. Diaz,* 2007 WL 1031516, *4 (M.D. Pa.).

Mere disagreement as to the proper medical treatment does not support a claim of an Eighth

Amendment violation. *Monmouth County Correctional Institution Inmates v. Lensaro,* 834 F.2d 326

(3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988); *see also Durmer v. O'Carroll*, 991 F. 2d 64, 67 (3d Cir. 1993) ('[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation.").  As such, "[a] distinction must be made between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment." *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988) *citing United States ex. rel. Walker v. Fayette County*, 549 F.2d 573, 575 n.2 (3d Cir. 1979).[6]

Since Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 117, pp. 1-13, ¶'s 1.-109.), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by evidence, we shall adopt as our own all of Defendants' facts contained in their SMF.   Further, Plaintiff has not responded, paragraph by paragraph, to the facts stated in Defendants' SMF as required.   Rather, Plaintiff has filed a Rebuttal to Defendants' SMF (Doc. 135) in which he points out numerous areas of his medical care he contends Defendants' evidence fails to mention.   Plaintiff's list of alleged omitted facts does not respond to or correspond with the paragraph-by-paragraph statement of facts contained in Defendants' SMF.[7]

---

[6]Both parties recognize the Eighth Amendment standard applicable to an inmate's  claim of denial of proper medical care.  (Doc. 116, pp. 19-22 and Doc. 141, pp. 12-14).

[7]We disagree with Plaintiff that Defendants' SMF was untimely.  (Doc. 135, pp. 1-2). Defendants' dispositive Motion was filed on April 16, 2008.  (Doc. 111).  Defendants' support Brief and SMF with exhibits were filed on April 30, 2008.  (Docs. 116 and 117).  Defendants' documents supporting their dispositive motion were timely filed within 10 days after their motion was filed in accordance with Local Rule 7.5 of M.D. Pa..  Plaintiff incorrectly counts weekends in arguing that Defendants' Brief and SMF were untimely.  *See* Fed. R. Civ. P. 6(a)(2).

In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.* Only the first fourteen paragraphs set forth in Barthalow's opposing statement of facts (Doc. 27) correspond to those in DHM's (Doc. 22). Barthalow's paragraphs fifteen through twenty appear to set forth separate statements of fact and the Rule 56.1 statement as a whole does not provide clear responses to paragraphs fifteen through forty of DHM's statement. Accordingly, the court will deem the facts in paragraphs fifteen through forty of DHM's statement to be admitted.

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D. Pa. 2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by plaintiff *see* L.R. 56.1 providing that the moving party's statement of material facts  will be deemed admitted unless the non-moving party specifically contradicts the statement").

We find that Plaintiff, by failing to directly controvert Defendants' SMF and by failing to respond, paragraph by paragraph, to Defendants' specific SMF, as required by Local Rule 56.1 of M.D. Pa. (Doc. 75), should be deemed as admitting paragraphs 1.-109.  of Defendants' SMF.[8] Although Plaintiff submitted his own exhibits  (Doc. 136, pp. 1-40) on June 16, 2008, he does not

---

[8]We note that Plaintiff has been sent a copy of the pertinent Local Rules of this Court (M.D. Pa.).  *See* Doc. 72.

cite to evidence in response to each and every paragraph of Defendants' SMF filed in support of their Summary Judgment Motion, and his Response (Dc. 135) does not properly respond, paragraph by paragraph, to any of Defendants' SMF as he was required to do by Rule 56.1.

Thus, to the extent that Defendants' SMF are supported by their evidence and are not disputed by Plaintiff in his Response, we shall consider them as unopposed. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (Under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[9]

We agree with Defendants and find that Plaintiff, through evidence, has not established that they were deliberately indifferent to his serious medical needs and that they denied and delayed him required treatment. We also find that Plaintiff has not shown Defendants did not treat him properly for his serious Hepatitis C and stage IV cirrhosis liver conditions by failing to provide him with a "liver friendly diet", and by failing to provide him with "medicinal white blood cell colinizing (sic) agents as adjunct therapy with [the prescribed] anti-viral therapy Interferion/Ribaviron (sic)". (Doc. 135). The numerous medical records of Plaintiff, while he was confined at FCI-Allenwood for about two years and four months, *i.e.* from December 15, 2004 to April 16, 2007 (Doc. 117, ¶'s 1. and 105.), show that Plaintiff received quite extensive medical care, on a continuous basis, for his numerous medical conditions, including his liver conditions. (Doc. 117, Ex. 1, Att. 1).

There is no dispute that when he arrived at FCI-Allenwood, Plaintiff was placed into the prison's chronic care clinic and he was diagnosed with Hepatitis C. (Doc. 117, ¶'s 1. and 6.). A

---

[9]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

CT scan, liver biopsy and laboratory testing were recommended by a liver specialist. (*Id.*, ¶ 7.). A March 24, 2005 CT scan revealed, "no definite focal masses or biliary dilatation, and a mild enlargement of the spleen." On May 4, 2005, Plaintiff was evaluated by a physician's assistant and he requested a special diet for his liver condition. Plaintiff was advised that the BOP did not have a special diet for Hepatitis inmates. (*Id.*, ¶'s 10.-12.).[10]

Plaintiff had a liver biopsy on May 12, 2005, at a non-prison hospital, which showed he had continual elevated liver enzymes and chronic Hepatitis C, grade IV, stage IV. (*Id.*, ¶'s 13.-17.). Plaintiff's laboratory tests showed "an elevated Hepatitis C viral load and genotype 1 Hepatitis C." (*Id.*, ¶ 18.). The BOP granted the prison's medical staff's request to treat Plaintiff's Hepatitis C, and Defendant Dr. Vermeire began to treat Plaintiff on October 25, 2005, "with 180 micrograms of Interferon per week and three 200 milligram tablets of Ribavirin two times per day." (*Id.*, ¶ 27.).

After blood work in November 2005, the prison medical staff were advised that Plaintiff had a critically low white blood cell count, and Plaintiff complained about side effects from his Interferon treatment. Plaintiff was provided with medical care. (*Id.*, ¶'s 30.-33.). Plaintiff was later given a work idle order due to the side effects from his medication. (*Id.*, ¶ 35.).

On November 17, 2005, Plaintiff was evaluated by Defendant Dr. Brady at his chronic care clinic visit. Blood work was ordered and Dr. Brady found it showed "a sustained increase in [Plaintiff's] white blood cell count and a decreased liver function test." (*Id.*, ¶'s 36.-39.). Plaintiff was again examined at the chronic care clinic in December 2005, and he was provided with follow-

---

[10]The undisputed medical treatment Plaintiff received at FCI-Allenwood is also found in Dr. Pigos's Declaration which is supported by Plaintiff's medical records. (Doc. 117, Ex. 1, ¶'s 1.-59., and Att. 1).

up care for his liver condition, including a continuation of his prescribed medications.  (*Id*., ¶'s 40.-41.).

On December 16, 2005,  Plaintiff was again examined at the chronic care clinic by Dr. Brady, and  he was provided with follow-up care for his liver condition.  Plaintiff's lab tests showed a mild improvement in his white blood cell and a modest decrease in his liver function tests.  Blood work was conducted on December 21, 2005, and Dr. Vermeire found that Plaintiff's white blood cell count was critically low and his liver function test was still low.  (*Id*., ¶'s 42.-45.).

On January 30, 2006, Plaintiff's Interferon/Ribavirin medications were renewed.  Blood work was conducted in February 2006, and Dr. Vermeire found that Plaintiff's white blood cell count and neutrophil count were critically low.  Dr. Vermeire decreased Plaintiff's Interferon to 90 micrograms per week and ordered additional lab work.  (*Id*., ¶'s 53.-55.).

Blood work was conducted on February  28, 2006, and Dr. Brady evaluated Plaintiff in March 2006, and found that Plaintiff's white blood cell count and neutrophil count had improved.  Dr. Brady decided to increase Plaintiff's Interferon to the full dose, 180 micrograms per week.  (*Id*., ¶'s 59.-62.).

Blood work was conducted in March 2006, and Dr. Vermeire found that Plaintiff's white blood cell count continued to  improve.   Blood work was also conducted in May  2006, and Dr. Pigos found that Plaintiff's white blood cell count was similar to his March 2006 count.  (*Id*., ¶'s 63.-70.).

On June 5, 2006, Plaintiff was again examined at the chronic care clinic by Dr. Pigos, and he was provided with follow-up care for his liver condition.  Plaintiff was advised that he was not

responding to the Hepatitis C treatment which was being administered to him by the prison medical staff in light of his increased viral load readings.   Blood work was conducted on June 19, 2006, and Dr. Pigos found that Plaintiff's white blood cell count was decreased.  The June 28, 2006 lab tests showed an improvement in Plaintiff's white blood cell count.  (*Id.*, ¶'s 72.-78.).

On August 24, 2006, Plaintiff was again examined at the chronic care clinic by Dr. Pigos, and he was provided with follow-up care for his liver conditions.  Plaintiff's medications were continued and lab tests were ordered.  The lab tests showed an increased Hepatitis C viral load. On August 28, 2006, Plaintiff's Interferon/Ribavirin medications were continued for four more weeks.  In September 2006, Dr. Pigos met with Plaintiff and advised Plaintiff that Plaintiff was not responding to the therapy prescribed by the medical staff and that Plaintiff was going to be referred to a liver specialist.   Plaintiff's medications were continued until he was examined by a liver specialist.   (*Id.*, ¶'s 80.-86.).

Blood work was conducted on September 20, 2006, and Dr. Pigos found that Plaintiff's white blood cell count and liver function test had improved, and that Plaintiff's Hepatitis viral load was increased. (*Id.*, ¶'s 87.-88.).

Plaintiff was examined by an outside liver specialist on October 13, 2006, who recommended that Plaintiff's Interferon/Ribavirin therapy be stopped.  The specialist discussed dietary changes and experimental treatment options.   As recommended, Plaintiff's stated medications were discontinued.  (*Id.*, ¶'s 90.-93.).

On November 8, 2006, Plaintiff was again examined at the chronic care clinic by Dr. Pigos, and he was provided with follow-up care for his liver conditions.  Plaintiff was ordered a medication

for itching.  (*Id*., ¶'s 94.-96.).

On February 1, 2007, Plaintiff was again examined at the chronic care clinic by Dr. Pigos, and  he was provided with follow-up care for his liver conditions.  Plaintiff was advised that he had primary treatment failure, and that experimental options were not available under BOP policy.  (*Id*., ¶'s 97.-99.).

Blood work was conducted on February 26, 2007, and Dr. Pigos  found that Plaintiff's liver function test had increased, and that Plaintiff's Hepatitis viral load was greatly increased.  (*Id*., ¶'s 100.-101.).

Plaintiff was treated by Dr. Pigos in April 2007 for kidney pain.  On April 16, 2007, Plaintiff was transferred from FCI-Allenwood.  (*Id*., ¶'s 102.-105.).

As indicated by Plaintiff's medical records at FCI-Allenwood (Doc. 117, Ex. 1, Att. 1), Plaintiff was not treated at any time by Defendant HSA Laino, and Laino was not involved in Plaintiff's treatment for his liver conditions.   Thus, as stated above, we have recommended that Defendant Laino be granted summary judgment.

We find that Plaintiff had serious liver conditions, *i.e.* Hepatis C and stage IV cirrhosis. However, based on the detailed, undisputed extensive medical treatment Plaintiff received at FCI-Allenwood for his liver conditions, we agree with Defendants that "it is clear that Defendants were not deliberately indifferent to [Plaintiff's] medical needs." (Doc. 116, p. 27).  We also agree with Defendants that Plaintiff is essentially complaining about his disagreements with the way the doctors (Defendants Vermeire, Brady and Pigos) at the prison were treating him for his liver conditions, and these disagreements do not amount to Eighth Amendment claims.  (*Id*.).

Plaintiff claims that Defendants improperly reduced his anti-viral medication which caused his viral load to increase, and that Defendants deprived him of "the opportunity for a cure." (Doc. 135, p. 7).  While Plaintiff disputes the decisions of the Defendant doctors regarding doses of the anti-viral medication he was receiving, such a dispute does not constitute an Eighth Amendment violation.  Also, the record simply does not show that Defendants deprived Plaintiff of "the opportunity for a cure" for his liver conditions.  Further, Plaintiff's belief that he should have been prescribed "adjunct therapy with use of a white blood cell colonizing agent before and while [he was] on anti-viral chemical therapy," and his claim that Defendants' failure to prescribe this therapy violated his Eighth Amendment rights, amount to a disagreement with the treatment Plaintiff received and not a constitutional violation.  We also find that the alleged failure of Defendants to provide Plaintiff with "liver friendly diet options" does not rise to the level of an Eighth Amendment violation, particularly in our case when dietary improvements were discussed with Plaintiff by the outside liver specialist and no specific diet was ordered by the liver specialist.  (Doc. 117, Ex. 1, ¶ 54.).[11]

The Court stated in *Gresh v. Berks Co.*, 2002 WL 1635394, *4 (E.D. Pa.):

> "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Dormer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  Medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Mere negligence or medical malpractice is

---

[11]To the extent that Plaintiff's present case is an FTCA action against Defendant United States in which he claims that his medical treatment by the BOP staff with respect to his liver conditions was negligent, as mentioned, we have recommended that this claim be dismissed under Pa. R. Civ. P. 1042.3, for failure of Plaintiff to file a COM.  (Doc. 165).

insufficient.  *See Estelle*, 429 U.S. at 106.  "Deliberate indifference . . . requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Planter*, 182 F.3d 192, 197 (3d Cir. 1999) (internal quotes and citations omitted).  Disagreement with a doctor's diagnosis, even if that disagreement is by another doctor, does not establish deliberate indifference.  *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Prisoners are not entitled to the best medical care available; they are merely guaranteed that their doctors will not be deliberately indifferent to their needs.  *See Campbell v. Sacred Heart Hospital*, 496 F.Supp. 692, 695 (E.D. Pa. 1980).

Plaintiff was prescribed a combination therapy and he was examined by an outside liver specialist.  He was regularly  examined and treated at the prison's chronic care clinic by the Defendant doctors.  He was regularly given bold tests and lab work to follow the course of his liver conditions and the effects of the treatment on them.  Plaintiff was provided with medical tests such as a CT scan and liver biopsy.  There is no evidence that Plaintiff was delayed any required treatment for his conditions as he alleges.  His liver conditions were monitored on a regular basis as seen from the above review of his medical records.

Therefore, we will recommend that Defendants' Motion be treated as a summary judgment motion with respect to Plaintiff's Eighth Amendment denial of proper medical care claims, and that this Motion be granted.[12]

---

[12]Since we have recommended that Defendants' Summary Judgment Motion be granted with respect to Plaintiff's Eighth Amendment claims based on the evidence which shows that Defendants did not violate Plaintiff's constitutional rights, we do not address Defendants' final argument that they are entitled to qualified immunity regarding these claims.  (Doc. 116, pp. 24-26).

**IV.  Recommendation.**

Based on the foregoing, it is respectfully recommended that Plaintiff's Motion to Compel Information Related to Defendants, **Doc. 154**, be denied.  It is also recommended that Defendants' Motion to Dismiss, **Doc. 111** be granted insofar as Plaintiff sues Defendants in their official capacities for monetary damages.  Further, it is recommended that Defendants' Motion for Summary Judgment with respect to Defendant Laino be granted, and that judgment be entered in favor of Defendant Laino and against Plaintiff.  Additionally, it is recommended that Defendants' Motion to Dismiss Plaintiff's § 1983 conspiracy claim and his Fourteenth Amendment equal protection claim be granted.

Moreover, it is recommended that Defendants' Motion be treated as a summary judgment motion with respect to Plaintiff's Eighth Amendment denial of proper medical care claims, and that this Motion be granted.

Finally it is recommended that judgment be entered in favor of Defendants Dr. Vermeire, Dr. Pigos, Dr. Brady and Dr. Okundaye, and against Plaintiff.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 6, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL EUGENE HODGE, | : | CIVIL ACTION NO. **3:CV-06-1622** |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 6, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                      **s/ Thomas M. Blewitt**

                                      **THOMAS M. BLEWITT**
                                      **United States Magistrate Judge**


**Dated: March 6, 2009**

34